UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| DOREIN P.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-cv-00162-JMS-KMB |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Dorein P. applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") from the Social Security Administration ("SSA") on March 21, 2017, for a closed period from February 1, 2017 through June 30, 2021.  [Filing No. 6-5 at 2; Filing No. 6-5 at 9.]  His applications were denied initially on June 28, 2017, [Filing No. 6-3 at 26-27], and upon reconsideration on November 3, 2017, [Filing No. 6-3 at 56-57].  On March 17, 2022, this Court remanded Dorein P.'s disability claims to the SSA for further administrative proceedings. [Filing No. 6-9 at 43-55.]  Upon remand, Administrative Law Judge Jeffrey Raeber ("the ALJ") conducted a telephonic hearing on September 20, 2022, [Filing No. 6-8 at 49-86], before issuing a decision on October 12, 2022, in which he concluded that Dorein P. was not entitled to benefits, [Filing No. 6-8 at 5-48].  Dorein P. did not file a written exception with the Appeals Council, and the ALJ's decision became the SSA's final decision subject to review.  See 20 C.F.R. § 404.984(b).

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

On December 21, 2022, Dorein P. filed this civil action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), seeking a review of the denial of his benefits. [Filing No. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted).[2] "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920.

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning SSI and DIB, which are identical in most respects. Cases may reference the section pertaining to DIB, such as in *Clifford*, which cites 20 C.F.R. § 404.1520. 227 F.3d at 868. Generally, a verbatim section establishes the same legal point with both types of benefits. *See, e.g.*, 20 C.F.R. § 416.920. The Court will usually not reference the parallel section but will take care to detail any substantive differences applicable to the case.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Dorein P. was 37 years of age on his alleged onset date.[3] [*See* Filing No. 6-5 at 2; Filing No. 6-5 at 9.] He has at least a high school education and previously worked as a machine operator, retail clerk, and "picker packer." [4] [Filing No. 6-8 at 39.]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Dorein P. was not disabled. [Filing No. 6-8 at 8-41.] Specifically, the ALJ found as follows:

- At Step One, Dorein P. did not engage in substantial gainful activity[5] from February 1, 2017, the alleged onset date, through June 30, 2021. [Filing No. 6-8 at 9-10.] However, Dorein P. did engage in substantial gainful activity during the period beginning July 1, 2021 through the date of the ALJ's decision. [Filing No. 6-8 at 8-9.]

---

[3] The ALJ determined that Dorein P. meets the insured status requirements of the Social Security Act through June 30, 2023. [Filing No. 6-8 at 8.]

[4] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- At Step Two, Dorein P. has the following severe impairments: bipolar disorder with anxious distress and a generalized anxiety disorder, degenerative disc disease, facet joint disease, foraminal stenosis, and radiculopathy of the lumbar spine. [Filing No. 6-8 at 10-11.]

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 6-8 at 11-16.]

- After Step Three but before Step Four, Dorein P. had the RFC to perform "light work" except that he has additional non-exertional limitations, including that he "cannot perform any work requiring a specific production rate, such as assembly-line work or work that requires hourly quotas; can have occasional interaction with the public and with co-workers, and can have superficial contact with all others, defined as no tasks involving arbitration, negotiation, confrontation, directing the work of others, persuading others, or being responsible for the safety or welfare of others; and is able to deal with occasional changes in a routine work setting." [Filing No. 6-8 at 16-38.]

- At Step Four, Dorein P. was unable to perform any past relevant work, both as actually and generally performed. [Filing No. 6-8 at 38-39.]

- At Step Five, relying on the testimony of the vocational expert ("VE") and considering Dorein P.'s age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Dorein P. can perform, including "Sorter," "Packer," and "Cleaner, Housekeeper." [Filing No. 6-8 at 39-40.]

## III.
### DISCUSSION

Dorein P.'s arguments center around the alleged limiting effects of his Bipolar II Disorder. [Filing No. 8 at 7-18.] Bipolar disorder, formerly called manic depression, is a "mental illness that causes unusual shifts in a person's mood, energy, activity levels, and concentration." *Bipolar Disorder*, National Institute of Mental Health, https://perma.cc/48QA-K85V (last visited August 3, 2023). Bipolar II is "one of three types of bipolar disorder that is defined by a pattern of depressive episodes and hypomanic episodes. The hypomanic episodes are less severe than the manic episodes in bipolar I disorder." *Michelle D. v. Kijakazi*, 2023 WL 4762713, at *2 (N.D. Ill.

5

July 26, 2023) (internal citations omitted). Dorein P. argues that the ALJ erred in three ways: (1) failing to craft an RFC that properly considers and reflects the limitations set forth by the medical opinions in the record, [Filing No. 8 at 7-14]; (2) failing to properly assess his subjective statements, as required by Social Security Regulation ("SSR") 16-3p, [Filing No. 8 at 14-16]; and (3) failing to properly assess the number of jobs in the national economy that Dorein P. can perform, [Filing No. 8 at 16-17]. The Court will address each issue in turn.

### A. The ALJ's Consideration of the Medical Opinions

Dorein P. argues that the ALJ erred in crafting his RFC by incorrectly weighing the credibility of the medical opinions in the record. Filing No. 8 at 7-14.] More specifically, Dorein P. argues that the ALJ erred by "not applying more rigor" to the opinions of a non-examining physician versus the opinions of a treating medical source and an examining physicians. [Filing No. 8 at 8-10.] Additionally, Dorein P. argues that the ALJ failed to include appropriate work-related social limitations in his RFC based on the medical evidence in the record, including his depression inventory scores as measured by the long-form patient health questionnaire ("PHQ-9 test"). [Filing No. 8 at 12-14.]

The Commissioner responds that the ALJ "thoroughly evaluated the relevant evidence and explained in detail how he assessed [Dorein P.'s] RFC." [Filing No. 9 at 8.] The Commissioner argues that ALJ "carefully evaluated the evidence before him and drew reasonable conclusions about [Dorein P.'s] limitations." [Filing No. 9 at 12.] While Dorein P. argues that his RFC should reflect additional social limitation, the Commissioner argues that "[t]hese limitations are from the opinions that received little to limited weight for various reasons" and, therefore, "there was no reason for the ALJ to incorporate these limitations into his RFC finding." [Filing No. 9 at 11-12.] Finally, the Commissioner responds that the ALJ appropriately weighted the mental opinions in

this case and that there is "no rule or regulation requiring ALJs to assign more weight to a treating or examining source than to a nonexamining source" [Filing No. 9 at 8-11.] The Commissioner argues that Dorein P.'s arguments are "nothing more than an invitation for the Court to reweigh the evidence, which this Court cannot do." [Filing No. 9 at 12.]

Dorein P. replies that the ALJ's RFC determination does not "track or coincide with the weight he assigned" to the medical opinions. [Filing No. 10 at 2-4.] Additionally, Dorein P. reiterates his arguments that the ALJ failed to appropriately weigh medical opinions in the record. [Filing No. 10 at 3-4.] Accordingly, Dorein P. contends that the ALJ "simply failed to build the accurate and logical bridge from these sources" to his RFC. [Filing No. 10 at 4.]

The RFC is an indication of the most that the claimant can do in a work setting despite his mental and physical limitations and must incorporate all of the claimant's limitations supported by the medical record. 20 C.F.R. § 404.1545; *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015); *Thomas v. Colvin,* 745 F.3d 802, 807 (7th Cir. 2014). While the ALJ need not discuss every piece of evidence in the record, the ALJ must "build an accurate and logical bridge from the evidence to [the] conclusion so that" the reviewing court "may assess the validity of the agency's final decision and afford [a claimant] meaningful review.'" *Giles v. Astrue,* 483 F.3d 483, 487 (7th Cir. 2007) (internal quotations omitted); *see also Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012) ("Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence."); *Zurawski v. Halter,* 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits."). "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an

opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p.

Due to the lengthy procedural history of this case, the applicable regulations for evaluating medical source opinions are those as they existed prior to March 27, 2017.[6] 20 C.F.R. § 404.1527; 20 C.F.R. § 416.927. Under these rules, an ALJ should "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]" because of his greater familiarity with the claimant's conditions and circumstances. *Minnick v. Colvin*, 775 F.3d 929, 937–38 (7th Cir. 2015). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *see also Minnick*, 775 F.3d at 938. If the ALJ opts not to give a treating physician's opinion controlling weight, he must apply the following factors when determining what weight to give to any medical opinion: examining relationship; treatment relationship (including length, frequency, and nature/extent of the relationship); supportability; consistency; specialization; and other factors "which tend to support or contradict the medical opinion." 20 C.F.R. § 404.1527(c)(1)-(6); *see also Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006).

---

[6] The SSA adopted new rules for agency review of disability claims for applications filed on or after March 27, 2017. 20 C.F.R. § 416.920c(b). Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c. Instead, the ALJ "will articulate how [he or she] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in" the regulations. 20 C.F.R. § 416.920c(b). Because Dorein P. applied for disability benefits before March 27, 2017, the new regulations do not apply to the review of his claims.

The Court agrees with the Commissioner that the ALJ provided an appropriately thorough explanation of how he considered the medical opinions in light of the other record evidence. Specifically, the ALJ determined that the opinions of SSA consulting psychologist, Dr. Kurzhal, received little weight because his opinions were "tenuously supported by a singular subjective report (low frustration tolerance) and by no clinically significant decline shown by comparison of his two reports from 2017, and because it is not consistent with the greatly expanded record at the extended hearing, appeals, and re-hearing stage of these claims." [Filing No. 6-8 at 33-35.] With respect to psychiatric mental health nurse practitioner Jamie Becker, PMHNP-BC ("NP Becker"), the ALJ acknowledged that NP Becker's opinion "warrants consideration" but determined that her opinions warranted "[l]ittle weight overall." [Filing No. 6-8 at 36-38.] The ALJ determined that NP Becker's opinion was not "well supported by medically acceptable clinical findings," "failed to offer one iota of objective clinical findings to support her opinion," and was "inconsistent with the other substantial evidence in the extant record" including her own treatment records. [Filing No. 6-8 at 37.] The ALJ further noted that Dorein P.'s "concurrent counseling notes," including his subjective replies to the PHQ-9 test, "reflect a degree of symptom improvement" which is "inconsistent with [NP Becker's] opinion for numerous markedly limited to even extremely limited mental abilities." [Filing No. 6-8 at 37.] As the Commissioner correctly points out, the ALJ did not incorporate the limitations assessed by Dr. Kurzhal or NP Becker in Dorein P.'s RFC because the ALJ found these limitations inconsistent with the other evidence in the record. [Filing No. 6-8 at 33-38.]

In contrast, the ALJ assigned "some significant weight" to Dr. Lovko's conclusion that Dorein P. had no more than a moderate limitation in interacting with others. [Filing No. 6-8 at 35.] While the ALJ noted that Dr. Lovko "lack[ed] any of [Dorein P.'s] mental health treatment

records," the ALJ stated that Dr. Lovko's findings "happen to be highly consistent" with Doerin P.'s psychological treatment records. [Filing No. 6-8 at 36.] Additionally, the ALJ determined that Dr. Lovko "not unfairly pointed out" that Dorein P.'s alleged symptoms "had not yet prompted [him] to seek mental health evaluation or treatment . . . for 'at least a decade.'" [Filing No. 6-8 at 36.] The ALJ then went on to not only incorporate the work-related social limitations assessed by Dr. Lovko into Dorein P.'s RFC, but he also "provided some additional language" of his own based on the record evidence. [Filing No. 6-8 at 36.; *see also* Filing No. 6-8 at 16 (assessing the quantitative social limitation recommended by Dr. Lovko and an additional qualitative social limitation based on the record.)]

Because the ALJ gave satisfactory explanations for the weight assigned to the medical opinions and how he incorporated these findings into Dorein P.'s RFC, the ALJ satisfied his obligations. *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) (citing *Elder v. Astrue*, 529 F.3d 408, 416 (7th Cir. 2008)). Therefore, remand is not supported on this basis.

### B. The ALJ's Consideration of Dorein P.'s Subjective Symptoms

Dorein P. argues that the ALJ's analysis under SSR 16-3 was "patently wrong." [Filing No. 8 at 14-16.] While the ALJ discussed that he was able to begin work in October 2020, Dorein P. argues that the ALJ "failed to note the material improvement in [his] bipolar and anxiety and depression by that time." [Filing No. 8 at 14.] Dorein P. argues further argues that the ALJ failed to consider that he is able to complete daily living activities, but he is only able to do so "at his own pace and when able, unlike the world of competitive work." [Filing No. 8 at 15.]

The Commissioner responds that "[s]ubstantial evidence supports the ALJ's determination that [Dorein P.'s] impairments were not as limiting as he claimed." [Filing No. 9 at 13.] The Commissioner argues that Dorein P.'s "inconsistent statements" regarding his daily living

10

activities, along with the statements of his wife and his mother-in-law during his period of untreated bipolar-related symptoms, were a reasonable basis for discounting his subjective complaints. [Filing No. 9 at 15.] Finally, the Commissioner points to Dorein P.'s treatment notes which furth "undercut" Dorein P.'s allegations. [Filing No. 9 at 14.]

Dorein P. reiterates his arguments upon reply. [Filing No. 10 at 4-5.]

SSR 16-3p establishes a two-part process by which ALJs should "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." SSR 16-3p, at *3. First, the ALJ determines whether an underlying medical impairment could reasonably be expected to produce an individual's symptoms. *Id.* If the claimant is found to have such a medically determinable impairment, the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *4.

To evaluate the intensity and persistence of an individual's symptoms, the ALJ must consider objective medical evidence, the individual's own statements, and evidence from nonmedical sources, considering the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *4-8. However, the ALJ need not formulaically address each factor found in SSR 16-3p and will only consider those factors relevant to the claimant's case. *Id.* at *8.

An ALJ's subjective symptom analysis is generally given "special deference." *Summers*, 864 F.3d at 528. However, the ALJ must justify his analysis with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and build an "accurate and logical bridge between the evidence and conclusion." *Villano*, 556 F.3d at 562. The ALJ's evaluation is subject to remand where the ALJ's decision lacks any explanation or support. *Elder*, 529 F.3d at 413–14.

In the present case, the ALJ provided a lengthy discussion of Dorein P's testimony along with the testimony of his wife and mother-in-law before ultimately concluding that Dorein P.'s subjective statements were "no more than partially consistent with the medical evidence and other evidence in the record." [Filing No. 6-8 at 28-31.] Specifically, the ALJ discussed that Dorein P.'s statements regarding the intensity, persistence, and limiting effects of his symptoms did not match his accounts to the medical examiners or his treatment notes, [Filing No. 6-8 at 29-30]; the fact that Dorein P. did not seek regular psychiatric treatment for much of the period at issue, [Filing No. 6-8 at 30]; the fact that Dorein P. has made inconsistent statements regarding his symptoms, [Filing No. 6-8 at 29]; the fact that he reported improvement through "individual counseling sessions, until he discontinued this adjunct treatment in early 2020 as no longer needed," [Filing No. 6-8 at 30]; and the fact that "he is able to control his mood and anxiety better with ongoing use of prescribed medications," [Filing No. 6-8 at 28].

Given the ALJ's detailed discussion of this testimony in relation to the record evidence, the Court finds that the ALJ adequately discussed Dorein P.'s subjective symptoms and sufficiently articulated his reasoning for discrediting certain portions of Dorein P.'s testimony as contrary to the medical evidence. Accordingly, the Court finds that the ALJ's consideration of Dorein P.'s symptoms under SSR 16-3p was sufficient and does not warrant remand.

### C. The ALJ's Step Five Findings

Dorein P. argues that the ALJ erred in his determination that a significant number of jobs existed that he was capable of doing during "the months from March 2020 until August or September, 2021 due to COVID- 19 and the lockdown of places of employment during these months." [Filing No. 8 at 15.]

The Commissioner responds that the ALJ acknowledged in his findings that Dorein P.'s counsel asked the VE "whether the jobs he identified were present from March of 2020 until at least June of 2021 given that many factories and business were closed due to COVID-19 pandemic" and the VE "estimated that 60% to 80% reduction in jobs may have occurred during this temporary period." [Filing No. 9 at 16.] However, the Commissioner argues that the "ALJ correctly noted that he is prohibited from considering the short-term effects of economic conditions" and explained that "the statutory definition of disability is intended to provide a definition that can be applied with uniformity and consistency throughout the nation, without regard to where a particular individual may reside, to local hiring practices or employer preferences, or to the state of the local or national economy." [Filing No. 9 at 16.] The Commissioner argues that the ALJ is prohibited from considering "'cyclical economic conditions,' under which the temporary and initial economic downturn during the initial months of the COVID-19 pandemic would qualify," the ALJ's finding should be affirmed. [Filing No. 9 at 16.]

Dorein P. replies that "many of the jobs listed by the [VE] simply did not exist from March, 2020 to August or September, 2021" due to the COVID-19 pandemic. [Filing No. 10 at 6.] Dorein P. argues that this period was "not a cyclical pattern" because it was a period that lasted "more than 12 consecutive months." [Filing No. 10 at 6.] Accordingly, Dorein P. argues that the ALJ

13

did not meet his burden of showing jobs that there are jobs that exist in significant numbers in the national economy that he can perform. [Filing No. 10 at 6.]

Once the ALJ has determined that a disability claimant's RFC leaves him unable to perform his past relevant work, the burden shifts to the ALJ to prove that the claimant is unable to perform any other work existing in significant numbers in the national economy. *Prill v. Kijakazi*, 23 F.4th 738, 747 (7th Cir. 2022). The SSA has explained that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1566(b).

If these conditions have been satisfied, the ALJ will determine that the claimant is not disabled, even if other unrelated factors affect the claimant's ability to obtain work. 20 C.F.R. § 416.966. For example, when making this determination, the ALJ will not consider the impact of cyclical economic conditions, the lack of job openings, or the fact that the claimant would "not actually be hired" to do work he could otherwise do. 20 C.F.R. § 416.966.

In this case, the ALJ determined that Dorein P. was able to perform the occupations of "Sorter," "Packer," and "Cleaner, Housekeeper" and that 310,000 of these jobs existed in the national economy. [Filing No. 6-8 at 40.] The ALJ further acknowledged the VE's testimony that:

> for a period beginning in March 2020 with the onset of the [COVID-19 Pandemic 'the Pandemic')] and economic 'shutdowns' in several States, there would have been a decline in the numbers of jobs for these three unskilled light occupations, specifically, the vocational expert estimated 60% to 80% reduction for this temporary period.

14

[Filing No. 6-8 at 40.] However, the ALJ determined that he was prohibited from considering this testimony because "the temporary and initial economic downturn during the initial months" of the Pandemic was a "cyclical economic condition" for purposes of 20 C.F.R. § 404.1566(c) and 20 C.F.R. § 416.966(c). [Filing No. 6-8 at 40.]

    The Court is mindful of the impact that the Pandemic had on job seekers. However, the Court finds that ALJ correctly noted that he is prohibited from considering the impact of the Pandemic as part of his Step 5 determination. "A claimant is not entitled to disability benefits if he is capable of working but remains unemployed because he cannot find work, few jobs exist in the local area, no job openings exist at a particular place of employment, or the claimant does not want to do a particular kind of work." *Jones v. Shalala*, 10 F.3d 522, 526 (7th Cir. 1993); *accord Trzebny v. Kijakazi*, 2023 WL 3480912, at *3 (7th Cir. May 16, 2023). While the Pandemic was undoubtedly an unprecedented time, the Court notes that previous courts have declined to consider the impact of other periods of economic tumult as part of the Step 5 analysis. *See Grant v. Colvin*, 586 F. App'x 419, 420 (9th Cir. 2014) (noting that the fact that claimant was "unemployable under current economic conditions as they existed in 2010 does not warrant a remand."); *Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988) (holding that claimant's "attempts to argue that, due to the downturn of the local economy, the [Commissioner] has failed to show that jobs are available to him . . . is foreclosed by 20 C.F.R. § 404.1566(c)").

    Moreover, even if the ALJ were permitted to consider the Pandemic as part of the Step 5 analysis, Dorein P. mischaracterizes the VE's testimony. Dorein P. repeatedly states that the jobs identified by the ALJ "did not in fact 'exist' in these months!" [Filing No. 8 at 17 (emphasis original); *see also* Filing No. 10 at 6.] While the VE did testify that the Pandemic would result in a significant reduction in job availability, it is inaccurate to suggest that the VE testified that these

jobs altogether ceased to exist during the Pandemic. [*See* Filing No. 6-8 at 81 (The VE testifying: "During the period of COVID I would suspect that 60 to 80% of those jobs would have been the adjusted number.")] The Seventh Circuit has explained that "[a]s few as 174 jobs has been held to be significant, . . . and it appears to be well-established that 1,000 jobs is a significant number." *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) (internal citation omitted) (collecting cases). Even with the significant impact of the Pandemic on job seekers, the ALJ's finding that a substantial number of jobs exist in the national economy is supported by the VE's testimony. Accordingly, the remand is not justified on this basis.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 271 (7th Cir. 2010). "The Act does not contemplate degrees of disability or allow for an award based on partial disability." *Id.* (citing *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985)). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet*, 364 F. App'x at 274. Taken together, the Court can find no legal basis presented by Dorein P. to reverse the ALJ's decision that he was not disabled during the relevant period. Therefore, the decision below is **AFFIRMED**. Final judgment shall issue accordingly.

Date: 8/9/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**